IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DON E. LANG,                        )
                                    )
        Plaintiff,                  )
                                    )
             vs.                    )    Civil Action No. 05-1497
                                    )
JO ANNE B. BARNHART,                )
Commissioner of Social Security,    )
                                    )
        Defendant.                  )

## MEMORANDUM OPINION

### I.    INTRODUCTION

Pending before the Court are cross-motions for summary judgment filed by Plaintiff Don E. Lang and Defendant Jo Anne B. Barnhart, Commissioner of Social Security. Plaintiff seeks review of the final decision by the Commissioner denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*[1]  For the reasons discussed below, Plaintiff's motion is granted and Defendant's motion is denied. The matter is remanded to the Commissioner for further consideration in light of the Opinion which follows.

---

[1] To be granted a period of disability and receive disability insurance benefits, a claimant must show that he contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he was last insured. 42 U.S.C. § 423(a). Mr. Lang's eligibility for DIB is not questioned.

## II.  BACKGROUND

### A.  Factual Background

Don E. Lang worked as a printing pressman for more than 20 years before he fell and broke his left clavicle and several ribs on July 2, 2001.  Although he returned to work in December 2001, he continued to have difficulty lifting and with numbness in his left arm and hand.  He also developed pain in his left knee and increased back pain, despite continued medical care including pain injections.  In February 2002, he underwent a second surgery on his shoulder and in April 2002, he had arthroscopic surgery on his left knee to repair a torn meniscus.  Again, he returned to work with the printing company.

At the hearing before the Administrative Law Judge ("ALJ"), Mr. Lang testified that he began drinking alcohol excessively in late 2002 "when the depression hit, . . . trying to get rid of the pain."  (Certified Copy of Transcript of Proceedings before the Social Security Administration, Docket No. 3 "Tr.," at 489.) Between February 2003 and March 2004, Plaintiff was admitted to a rehabilitation center, hospital, or psychiatric clinic on at least four occasions for alcohol dependence and depression.  During this period, he also continued to receive medical treatment for pain in his shoulder, left hand, knee, and back.

On May 7, 2003, Plaintiff was fired for poor attendance and failing a "last chance agreement."  (Tr. 85.)  In a disability

2

report completed on July 8, 2003, Mr. Lang stated he was unable to stand or sit for any extended period of time due to a broken clavicle, "degenerating lower disks" in his back, nerve damage in his left shoulder, and injury to his left knee.  (Id.)

B.   Procedural Background

On June 9, 2003, Mr. Lang protectively filed for disability insurance benefits, claiming that he had become disabled as of July 2, 2001. (Tr. 59.)  Plaintiff's application was denied on November 4, 2003 (Tr. 31-33), after which he timely requested a hearing before an ALJ on January 9, 2004.  (Tr. 38-39.)

On March 9, 2005, a hearing was held before the Honorable Kenneth R. Andrews at which Plaintiff was represented by counsel. Judge Andrews issued his decision on April 28, 2005, again denying benefits.   (Tr. 14-22.)   The Social Security Appeals Council declined to review the ALJ's decision on September 2, 2005, finding no error of law or abuse of discretion and concluding the decision was based on substantial evidence to support the ALJ's findings. (Tr. 8-10.)   Therefore, the April 28, 2005, opinion became the final decision of the Commissioner for purposes of review.   42 U.S.C. § 405(h); Rutherford v. Barnhart, 399 F.3d 546, 549-550 (3d Cir. 2005), citing Sims v. Apfel, 530 U.S. 103, 107 (2000). Plaintiff filed suit in this Court on October 26, 2005, seeking judicial review of the ALJ's decision.

3

C.   Jurisdiction

This Court has jurisdiction by virtue of 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g)) which provides that an individual may obtain judicial review of any final decision of the Commissioner by bringing a civil action in the district court of the United States for the judicial district in which the plaintiff resides.

## III. STANDARD OF REVIEW

The scope of review by this Court is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389 (1971); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999). Findings of fact by the Commissioner are considered conclusive if they are supported by "substantial evidence," a standard which has been described as requiring more than a "mere scintilla" of evidence, that is, equivalent to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, id. at 401. "A single piece of evidence will not satisfy the substantiality test if the [ALJ] ignores, or fails to resolve a conflict, created by countervailing evidence." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).

This Court does not undertake de novo review of the decision

4

and does not re-weigh the evidence presented to the Commissioner. Schoengarth v. Barnhart, 416 F. Supp.2d 260, 265 (D. Del. 2006), citing Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986) (the substantial evidence standard is deferential, including deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence.)  If the decision is supported by substantial evidence, the Court must affirm the decision, even if the record contains evidence which would support a contrary conclusion.  Panetis v. Barnhart, No. 03-3416, 2004 U.S. App. LEXIS 8159, *3 (3d Cir. Apr. 26, 2004), citing Simmonds v. Heckler, 807 F.2d 54, 58 (3rd Cir. 1986), and Sykes v. Apfel, 228 F.3d 259, 262 (3rd Cir. 2000).

## IV.  LEGAL ANALYSIS

### A.  The ALJ's Determination

In determining whether a claimant is eligible for disability insurance benefits, the burden is on the claimant to show that he has a medically determinable physical or mental impairment (or combination of such impairments) which is so severe he is unable to pursue substantial gainful employment[2] currently existing in the national economy.  The impairment must be one which is expected to result in death or to have lasted or be expected to

---

[2]  According to 20 C.F.R. § 404.1572, substantial employment is defined as "work activity that involves doing significant physical or mental activities. . . . Work may be substantial even if it is done on a part-time basis."  "Gainful work activity" is the kind of work activity usually done for pay or profit.

last   for   not   less   than   twelve   months.   42   U.S.C.
§ 1382c(a)(3)(C)(i); Morales v. Apfel, 225 F.3d 310, 315-316 (3d
Cir. 2000).

To determine a claimant's rights to DIB,[3] the ALJ conducts a
formal five-step evaluation:

(1) if the claimant is working or doing substantial gainful
activity, he cannot be considered disabled;

(2) if the claimant does not suffer from a severe impairment
or combination of impairments that significantly limits
his ability to do basic work activity, he is not
disabled;

(3) if the claimant does suffer from a severe impairment
which meets or equals criteria for an impairment listed
in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the
Listings") and the condition has lasted or is expected to
last continually for at least twelve months, the claimant
is considered disabled;

(4) if the claimant retains sufficient residual functional
capacity ("RFC")[4] to perform his past relevant work, he
is not disabled; and

(5) if, taking into account the claimant's RFC, age,
education, and past work experience, the claimant can
perform other work that exists in the local, regional or
national economy, he is not disabled.

20 C.F.R. § 404.1520(a)(4); see also Morales, 225 F.3d at 316.

In steps one, two, and four, the burden is on the claimant to

---

[3]  The same test is used to determine disability for purposes of
receiving either DIB or supplemental security income benefits. Burns
v. Barnhart, 312 F.3d 113, 119, n1 (3d Cir. 2002). Therefore, courts
routinely consider case law developed under either type of benefits.

[4]  Briefly stated, residual functional capacity is the most a
claimant can do despite her recognized limitations. Social Security
Ruling 96-9 defines RFC as "the individual's maximum remaining ability
to perform work on a regular and continuing basis, i.e., 8 hours a
day, for 5 days a week, or an equivalent work schedule."

present evidence to support his position that he is entitled to Social Security benefits, while in the fifth step the burden shifts to the Commissioner to show that the claimant is capable of performing work which is available in the national economy.[5] <u>Sykes v. Apfel</u>, 228 F.3d 259, 263 (3d Cir. 2000).

Following the prescribed analysis, Judge Andrews first concluded that Mr. Lang had not engaged in substantial gainful activity since his alleged onset date of July 20, 2001.[6]  (Tr. 18.) Resolving step two in Plaintiff's favor, the ALJ found that he suffered from an affective disorder; impairments of the left shoulder, left knee, and left hand; chronic back pain syndrome; and a history of alcohol abuse, all of which were "severe impairments" as that term is defined by the Social Security Administration ("SSA.")[7]  (<u>Id.</u>)

_____

[5] Step three involves a conclusive presumption based on the listings, therefore, neither party bears the burden of proof at that stage. <u>Sykes</u>, 228 F.3d at 263, n2, *citing* <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146-147 n5 (1987).

[6] Plaintiff's claimed onset date was July 2, 2001, not July 20. Moreover, the Court questions this conclusion by the ALJ since the record is clear that Plaintiff continued to work through May 2003, albeit sometimes on an irregular basis. (*See* earnings record, Tr. 72, 76-77.)  This point may need to be clarified on remand.

[7] *See* 20 C.F.R. §§ 404.1520(c), 404.1521(a), and 140.1521(b), stating that an impairment is severe only if it significantly limits the claimant's physical or mental ability to do "basic work activities," i.e., physical "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling," or mental activities such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. § 404.1521(b). A

7

At step three, Judge Andrews addressed the medical evidence pertaining to Plaintiff's chronic back pain syndrome secondary to disc herniation and degenerative changes; the after-effects of a broken left clavicle with concomitant injury to the brachial plexus nerve and the subsequent surgery to repair his shoulder; the limitations of his left hand due to pain and numbness; the torn medial meniscus in his left knee and the surgical repair thereof; and chest pain. (Tr. 18-20.) Having reviewed the evidence, the ALJ concluded that none of these impairments satisfied any of the criteria in Listing 1.00, Musculoskeletal System.

Also at step three, the ALJ addressed Plaintiff's history of alcohol abuse and depression. (Tr. 20.) He concluded that his "history of alcohol abuse does not present the requisite behavioral or physical changes affecting the central nervous system as required under [Listing] 12.09."[8] (Tr. 18.) He also stated,

---

"severe" impairment is in contrast to "a slight abnormality" which has such a minimal effect that it would not be expected to interfere with the claimant's ability to work, regardless of his age, education, or work experience. Yuckert, 482 U.S. at 149-151. The claimant has the burden of showing that the impairment is severe. Id. at 146, n5.

[8] Listing 12.09, Substance Addiction Disorders, requires the claimant to show "behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system. The required level of severity for these disorders is met when the requirements in any of the following . . . are satisfied." The ALJ is directed to evaluate nine disorders according to other Listings: (A) organic mental disorders to be evaluated under Listing 12.02; (b) depressive syndrome under 12.04; (C) anxiety disorders under 12.06; (D) personality disorders under 12.08; (E) peripheral neuropathies under 11.14; (F) liver damage under 5.05; (G) gastritis under 5.04; (H) pancreatitis under 5.08; and (I) seizures under 11.02 or 11.03. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.09.

8

"There is, undoubtedly, a direct correlation between alcohol abuse and depression." (Tr. 20.) Although he noted that Plaintiff had been prescribed "appropriate antidepressant medications" (id.), he did not explicitly state a conclusion as to whether Plaintiff's depressive disorder or anxiety disorder met Listing 12.04 or 12.06, respectively.

At step four, the ALJ concluded Mr. Lang could not perform his past relevant work as a printer which was described as heavy and unskilled by the vocational expert ("VE") who testified at the hearing. At step five, the ALJ concluded that although Mr. Lang could not perform a full range of sedentary work, he retained the capacity to perform simple, low-stress sedentary jobs which would not require climbing ladders or scaffolds or working above shoulder level, and which would also allow for a sit/stand option. Relying on the testimony of the VE, the ALJ concluded that there were a significant number of jobs Mr. Lang could perform despite his impairments, e.g., packer, golf ball trimmer and assembler. (Tr. 18-19, 21.) Therefore, based on Plaintiff's status as a younger individual[9] with a high school education, a work history of unskilled labor which did not provide transferrable skills, the medical evidence of record, and the testimony of the VE, the ALJ determined that Mr. Lang was not disabled and, consequently, not

---

[9] Plaintiff was 46 years old at the time of the hearing and 42 on the alleged onset date. As such, he is considered a "younger" person according to Social Security regulations. 20 C.F.R. § 404.1563(c).

entitled to benefits.   (Tr. 20.)

B.   Plaintiff's Arguments[10]

Plaintiff argues the ALJ erred in two ways.  First, prior to completing the five-step analysis, the ALJ determined that Plaintiff's mental impairments were caused by his alcohol abuse and, consequently, did not properly apply the regulations related to disability determinations in which alcoholism or other substance abuse is implicated.   This error was compounded by the ALJ's failure to inquire at the hearing about Mr. Lang's mental impairments except in the context of alcohol use.  (Plaintiff's Brief in Support of Motion for Summary Judgment, Docket No. 9, "Plf.'s Brief," at 12-18.)  The second alleged error is the ALJ's failure to give appropriate weight to Plaintiff's subjective complaints of pain and depression, particularly in light of his long work history.   (Id. at 18-20.)   We address each of these arguments in turn.

1.   Analysis of Disability in the Context of Drug or Alcohol Addiction:   In 1996, Congress amended Title II of the Social Security Act pursuant to the Contract with America Advancement Act of 1996, Pub. L. No. 104-121, to effectively bar the award of disability benefits based on alcoholism or drug

---

[10]   Defendant argues only that the ALJ's decision was supported by substantial evidence and, consequently, should be affirmed. (Defendant's Brief in Support of Her Motion for Summary Judgment, Docket No. 7.)  In light of Plaintiff's arguments and the conclusion that remand is necessary, we need not address Defendant's argument.

addiction. Torres v. Chater, 125 F.3d 166, 169 (3d Cir. 1997); Sklenar v. Barnhart, 195 F. Supp.2d 696, 698 (W.D. Pa. 2002). As codified, an individual "shall not be considered to be disabled . . . if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).

This amendment requires an ALJ to undertake a two-part analysis. First, he must determine whether the claimant is entitled to disability benefits, applying the traditional five-step analysis. Warren v. Barnhart, CA No. 00-3109, 2005 U.S. Dist. LEXIS 12312, *31 (E.D. Pa. June 22, 2005). If the claimant is found disabled and there is medical evidence of a substance abuse disorder, the ALJ must then determine if alcoholism or drug addiction is a contributing factor material to the claimant's disability. Id. at *33. "When an applicant for disability benefits both has a potentially disabling illness and is a substance abuser, the issue for the administrative law judge is whether, were the applicant not a substance abuser, [he] would still be disabled." Kangail v. Barnhart, 454 F.3d 627, 628-629 (7th Cir. 2006), citing 20 C.F.R. § 404.1535(b)(1). The claimant, however, has the burden of showing that alcoholism was not a contributing factor material to the disability determination. Brueggemann v. Barnhart, 348 F.3d 689, 693 (8th Cir. 2003).

11

Plaintiff rests his argument on the ALJ's failure to follow

the procedures set out in the SSA's internal policy manual, the

Hearings, Appeals, and Litigation Law Manual ("HALLEX".)   (Plf.'s

Brief at 14-15.)   HALLEX is intended to convey "guiding principles,

procedural guidance and information to the Office of Hearings and

Appeals staff."   Cromer v. Apfel, No. 00-1858, 2000 U.S. App. LEXIS

26861, *5 (7th Cir. Oct. 16, 2000), quoting HALLEX, Chapt. I-1-001.

At this time, the circuits are split on the question of whether the

Commissioner's failure to follow HALLEX is reversible error.[11]   The

Third Circuit Court of Appeals has not handed down a decision which

directly addresses that issue,[12] but this Court need not attempt to

---

[11]   Compare, e.g., Moore v. Apfel, 216 F.3d 864, 868-869 (9th Cir.
2000), holding that HALLEX is "strictly an internal guidance tool" and
as such has no legal force and is not binding, in part because it was
not published in either the Federal Register or the Code of Federal
Regulations and thus not promulgated in accordance with the procedural
requirements imposed by Congress for creation of binding regulations,
with Newton v. Apfel, 209 F.3d 448, 459 (5th Cir. 2000), holding that
although HALLEX does not carry the force of law, an agency must follow
its own procedures where the rights of individuals are affected, "even
where the internal procedures are more rigorous than otherwise would
be required."   See also E.E.P. v. Barnhart, CA No. 03-246, 2004 U.S.
Dist. LEXIS 11636, *5-*6 (D. Me. June 24, 2004), noting that although
the First Circuit has not addressed the role of HALLEX in any reported
decision, the Circuit's requirement that the Commissioner comply with
the SSA's Program Operation Manual System ("POMS") was a sufficient
basis from which to conclude that the First Circuit would likely to
follow the view of the Fifth Circuit; and Thornton v. Barnhart, CA No.
05-55, 2006 U.S. Dist. LEXIS 12859, *32 (W.D. Va. Mar. 21, 2006),
"assuming, without deciding, that the agency must follow its HALLEX
guidelines, even when they are more rigorous than constitutionally
required."

[12] The Third Circuit Court of Appeals has noted that the Program
Operation Manual System does "not have the force of law."   See Edelman
v. Commissioner of Social Sec., 83 F.3d 68, 71 n2 (3d Cir. 1996),
citing Schweiker v. Hansen, 450 U.S. 785, 789 (1981); see also
Hirschfeld v. Apfel, 159 F. Supp.2d 802, 812, n6 (E.D. Pa. 2001),

12

resolve the question,[13] however, because we agree with the court in
Brueggemann that "[t]he plain text of the relevant regulation
requires the ALJ first to determine whether [the claimant] is
disabled." Id. 348 F.3d at 694; see also Williams v. Barnhart, 338
F. Supp.2d 849, 862 (D. Tenn. 2004), concluding that the
regulations implementing 42 U.S.C. § 423(d)(2)(C) "clearly require
that the sequential evaluation process be followed in adjudicating
disability before any consideration is given to whether drug
addiction is the cause of such disability."

    The regulations provide that where there is evidence of drug

---

citing Edelman and Schweiker. See, however, Washington State Dept. of
Soc. & Health Servs. v. Guardianship Estate of Keffeler, et al., 537
U.S. 371, 385-386 (2003), noting that although these "administrative
interpretations" are not the product of formal rulemaking, "they
nevertheless warrant respect." Keffeler, 537 U.S. at 385-386.

[13] Compare cases from other district courts in this circuit
relying on and/or citing HALLEX: Grottoli v. Chater, CA No. 95-7274,
1996 U.S. Dist. LEXIS 15938, *10-*11 (E.D. Pa. Oct. 18, 1996) (Van
Antwerpen, J.), relying on HALLEX for the definition of "literacy" in
determining whether a claimant was eligible for benefits; Coulbourne
v. Barnhart, CA No. 00-370, 2002 U.S. Dist. LEXIS 27029, *7 (D. Del.
July 15, 2002) (Farnan, J.), citing without discussion the HALLEX
guideline on how medical determinations are to be made when an
individual's disability insurance benefits are cancelled pursuant to
the 1996 amendment to the regulations; Greco v. Barnhart, CA No. 01-
4721, 2002 U.S. Dist. LEXIS 17330, *6 (E.D. Pa. Sept. 4, 2002) (Van
Antwerpen, J.), same as Coulbourne; Irelan v. Barnhart, CA No. 02-
1192, 2002 U.S. Dist. LEXIS 25636, *22-*23 (E.D. Pa. Oct. 10, 2002)
(Hart, J.), noting that "the rarely-involved" HALLEX precludes a VE
from providing an opinion on psychological matters even if he is a
certified mental health professional; Brittingham v. Barnhart, CA No.
02-459, 2003 U.S. Dist. LEXIS 20869, *13 (D. Del. Nov. 17, 2003)
(Farnan, J.), applying HALLEX in determining that the ALJ, not the
local SSA Office, was the authority on whether a claimant had "good
cause" for an untimely filing; Frontanez-Rubiani v. Barnhart, CA No.
03-1514, 2004 U.S. Dist. LEXIS 21475, *17 (E.D. Pa. Sept. 30, 2004)
(Savage, J.), same as Grottoli; and Warren, supra (Dalzell, J.),
applying HALLEX extensively in the analysis of 20 C.F.R. § 404.1535.

13

addiction or alcoholism in the claimant's medical history, the SSA

applies the following process:

    (a)   General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.

    (b)   Process we will follow when we have medical evidence of your drug addiction or alcoholism.

        (1)   The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

        (2)   In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

           (i)  If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

           (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 404.1535.

     The language of the regulation, e.g., such phrases as "*If* we find that you are disabled. . .;" "whether we *would still find you disabled* if you stopped using drugs or alcohol. . .;" and "which of

14

your . . . limitations, *upon which we based our current disability determination*," makes clear that the ALJ is first to determine disability based on all of the claimant's mental and physical limitations. The ALJ then considers the limitations unrelated to drugs or alcohol in a second, separate analysis.

As a hypothetical example, the medical evidence could show that a claimant suffered from chronic liver disease of such severity that it satisfied Listing 5.05. He would then be declared disabled *per se* at step three of the analysis. If there were no evidence of alcohol abuse, the analysis would end at that point, i.e., § 404.1535 would not come into consideration at all. On the other hand, if the record included evidence of alcohol abuse, the ALJ would apply § 404.1535(b) and "filter out" those effects in order to ascertain if the claimant would still be disabled if he no longer used alcohol. If the evidence showed the claimant continued to use alcohol but that his liver disease would be alleviated sufficiently that he would no longer meet Listing 5.05 if he stopped doing so, the ALJ could rationally conclude that alcohol use was a "contributing factor material to the determination of disability." That is, § 404.1535(2)(b)(i) would be satisfied and the claimant would not be eligible for Social Security benefits. Alternatively, if there were evidence that the claimant used alcohol in the past but was no longer doing so or evidence that his liver disease resulted from some cause entirely unrelated to

15

alcohol use, the ALJ could conclude that alcohol use was not a contributing factor. Section 404.1535(2)(b)(ii) would be satisfied and the prior disability determination would stand.

As discussed above, here the ALJ addressed the question of Plaintiff's history of alcohol abuse at the third step of the analysis, noting his treatment at Greenbriar Treatment Center ("Greenbriar") in February 2003 (Tr. 307-333); a psychological consultation report in May 2003, when he was admitted through the emergency room of Mercy Hospital with chest pain (Tr. 151-158); the findings of Arlene L. Rattan, Ph.D., who prepared a clinical psychological disability evaluation at the request of the SSA on August 27, 2003 (Tr. 234-238); the medical records from Western Psychiatric Institute and Clinic ("WPIC") to which Mr. Lang was committed by his brother in February-March 2004 after he demonstrated homicidal and suicidal behavior (Tr. 337-347); and notes from a second in-patient stay at Greenbriar in March 2004 after his release from WPIC (Tr. 348-373.)[14]

The ALJ made no explicit findings from these records, noting only that "there is, undoubtedly, a direct correlation between alcohol abuse and depression. Also there is some indication that

---

[14]   The record also contains notes from subsequent treatment at Greenbriar between November 2004 and February 2005 (Tr. 401-469) which were admitted as an exhibit at the hearing but which the ALJ does not discuss in his decision.

16

the claimant is .. . minimally motivated for treatment."[15]   (Tr. 20.)  He also noted that Mr. Lang had testified that "he no longer abuses alcohol and attends AA meetings." (Tr. 21.)  The underlying problem with this portion of the ALJ's analysis is that he fails to make any finding of fact with regard to the effects of Mr. Lang's mental impairments considered independently of his alcohol abuse. Nor is there any reference to the special analysis required pursuant to § 404.1535.

The record shows evidence of depression and anxiety which *may be* distinguishable from mental problems resulting from alcohol abuse.  For instance, in February 2003, when Plaintiff was treated as an inpatient at Greenbriar, the record shows that he had experienced two recent panic attacks.  (Tr. 318.)  His Global Assessment of Functioning score[16] ("GAF") was 38-40 and his

---

[15]   The entry which the ALJ cites for this statement (Exhibit 24F) states in full that "Donald seemed minimally motivated for treatment at the time of admission.  As treatment progressed, he seemed increasingly invested in treatment and recovery.  (Tr. 349, discharge summary dated March 17, 2004, reporting on client's response to treatment.)  Given the brief analysis of the impact of alcohol dependence in the ALJ's decision, we question his reliance on only a part of this statement.   "An ALJ is not entitled to pick and choose through a physician's opinion."  *See* Sklenar, 195 F. Supp.2d at 703, n6.

[16] The Global Assessment of Functioning or GAF scale assesses how well an individual can function according to psychological, social, and occupational parameters, with the lowest scores assigned to individuals who are unable care for themselves.  Drejka v. Barnhart, CA No. 01-587, 2002 U.S. Dist. LEXIS 7802, *5, n2 (D. Del. Apr. 18, 2002).  A GAF score of 51-60 indicates moderate symptoms, such as a flat affect, or moderate difficulty in social or occupational functioning.  Id.  "A GAF score of 41-50 indicates serious symptoms or serious impairment in social, occupational, or school functioning,

prognosis was described as guarded. (Tr. 308, 313.)

Dr. Koushik Mukherjee, who evaluated Mr. Lang in association with his admission to Mercy Hospital in May 2003, noted mixed reports of "getting depressed when he uses alcohol," not feeling depressed when he was sober, and his family's impression that he was depressed even when he was not using alcohol. (Tr. 156.) He also noted that Mr. Lang would need outpatient follow up "especially for his depression, after he completes his rehab." (Tr. 158.) Dr. Mukherjee's diagnosis was alcohol dependence with a need to rule out substance induced mood disorder. (Tr. 157.) At the time of the diagnosis, Mr. Lang's GAF was 45.

In August 2003, Dr. Rattan described Mr. Lang "as a very nervous gentleman who admitted to feeling anxious." (Tr. 235.) He also reported occasional depression and insomnia, but denied suicidal or homicidal ideation, hallucinations or delusions. (Id.) Mr. Lang reported that he had been on medication for anxiety but "felt that he was doing well," and so did not continue. (Tr. 234.) At that time, his only medication was cyclobenzaprine[17] which caused side effects of drowsiness and lightheadedness. (Tr. 234.) He

---

such as inability to keep a job." Langley v. Barnhart, 373 F.3d 1116, 1122 n3 (10th Cir. 2004), quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 32.

[17] Cyclobenzaprine, a muscle relaxant, is used with rest, physical therapy, and other measures to relax muscles and relieve pain and discomfort caused by strains, sprains, and other muscle injuries. See www.nlm.nih.gov/medlineplus.

also reported that stress at work had resulted in an anxiety attack "about four years ago," and a second attack in June 2003. (Tr. 235.) Dr. Rattan diagnosed Plaintiff with generalized anxiety disorder, with a need to rule out major depressive disorder and alcohol-related disorder; his prognosis was guarded. (Tr. 236.) She also noted "severe anxiety as observed during [the] interview" as the basis for her assessment that Mr. Lang would have marked restrictions with regard to his ability to respond appropriately to work pressures and changes in a routine work setting. (Tr. 237.) Finally, regarding Plaintiff's alcohol consumption, Dr. Rattan noted an "unknown extent of impact; with current use - 3 [times per] week about 6 beers on each occasion." (Tr. 238.)

On February 24, 2004, Mr. Lang was involuntarily committed to WPIC after he threatened to kill his wife and himself during an alcoholic blackout. (Tr. 349.) His mood at the time of his admission was described as anxious and depressed; his GAF was 20. (Tr. 338.) The diagnosis was depressive disorder NOS and alcohol dependence. (Tr. 340.) A psychiatric evaluation prepared by Dr. Peter Murray and Robert Kline at admission noted that he was committed as a "combination of depression, drinking and overall dysfunction." (Tr. 344.)

Upon release from WPIC, Mr. Lang returned to Greenbriar. He reported to his psychiatrist, Dr. Oscar Urrea, that he had "an anxiety problem," and was "more nervous than depressed." (Tr.

19

362.)   At that time, his medications consisted of Lexapro and Trazodone;[18] no side effects were noted.  (Id.)  Mr. Lang's reported GAF score was 40.   Dr. Urrea recommended that Plaintiff see a psychiatrist and remain on psychopharmacological agents.  (Tr. 363.)   Dr. Urrea distinguished among diagnoses of alcohol dependence, anxiety disorder, and organic mood disorder due to alcohol.  (Id.)

Other medical records from his inpatient and outpatient treatment at Greenbriar in March 2004 indicate that Mr. Lang reported chronic pain. (Tr. 351.)  The notes also indicate that he "seems to use [alcohol] to deal with his stress and anxiety" stemming from lack of employment and his financial condition. (Tr. 355.)  His GAF on March 9, 2004, was 37. (Tr. 261.)

Mr. Lang (apparently voluntarily) returned to Greenbriar as an outpatient in November 2004. On admission, Dr. Scott Cook noted an impression of alcohol and nicotine dependence, benzodiazepine prescribed use and a history of depression and anxiety. (Tr. 463-464.)

Finally, on February 28, 2005, Nichol West, a licensed social worker,[19] completed a form entitled "Medical Opinion re Ability to

---

[18]   Trazodone and Lexapro (escitalopram) are used to treat mental depression.  See www.nlm.nih.gov/medlineplus.

[19]   The Court recognizes that a licensed social worker is not an "acceptable medical source" as that term is defined by the SSA.  See 20 C.F.R. § 404.1513(a) (acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language

20

Do Work-Related Activities (Mental.)"  (Tr. 398-399.)  In it, she

opined that Mr. Lang suffered from bipolar disorder NOS and alcohol

dependence and that his highest GAF during the past year was 50.

(Tr. 398.)  She indicated his ability to do work-related activities

even at an unskilled level was no better than fair.  (Id.)  She

also concluded that "Don is a very angry person who uses drinking

as a coping skill," that his physical pain caused him to become

easily angered, and he was "drinking to cope [with] his

frustration."  (Tr. 388-389.)

     These medical reports are consistent with Plaintiff's

testimony at the hearing.  For instance, he testified that his

drinking got out of control

     when the depression hit.  When I was in so much pain and
     . . . I missed a lot of work because of the doctor's
     appointments and after the back and the knee and so on.
     I think the depression caused the drinking really because
     I was just like so overwhelmed with fear of losing my job
     . . . and I just didn't know which way to turn.

(Tr. 489.)

     We conclude the ALJ erred by failing to complete the five-step

analysis as set out in 20 C.F.R. § 404.1520(a)(4), including

_____

pathologists.)  Thus, Ms. West's opinions would not be entitled to
controlling weight.  20 C.F.R. § 404.1513(d).  Pursuant to that same
regulation, however, the ALJ may consider evidence of a claimant's
impairments as provided by individuals who are not acceptable medical
sources, e.g., counselors, nurse-practitioners, physicians'
assistants, early intervention team members, and public and private
social welfare agency personnel.  Here, the ALJ does not mention Ms.
West's report, although the Third Circuit Court of Appeals has held
that it is the ALJ's responsibility to "consider and weigh all of the
non-medical evidence before him."  Burnett v. Commissioner of SSA, 220
F.3d 112, 122 (3d Cir. 2000) (internal citations omitted).

consideration of Plaintiff's depression and anxiety, without "deductions" for the assumed affects of alcohol abuse. Brueggemann, 348 F.3d at 695. If he found Mr. Lang not to be disabled, the analysis would end there. Conversely, if Mr. Lang were found disabled, either by meeting a Listing at step three or by concluding at step five that there were no jobs which he could perform given his impairments, the ALJ would then have to engage in the admittedly hypothetical and more difficult task of determining which limitations would remain if Plaintiff were no longer actively abusing alcohol. Brueggemann, id. at 694-695. Here, there is the added complication of evidence tending to show that Mr. Lang's depression and anxiety could be either the cause or the effect of his alcohol abuse, as well as evidence that he had not used alcohol for at least five months prior to the hearing (November 2004 to March 2005) and was actively participating in rehabilitation. (Testimony at Tr. 482.) If the ALJ is unable to determine from the record which physical and mental limitations would remain if the claimant stopped his substance abuse or if those limitations would be disabling, the claimant must be considered disabled and awarded benefits. Warren, 2005 U.S. Dist. LEXIS 12312 at *34-*35. As the court noted in Brueggemann, "[e]ven though the task is difficult, the ALJ must develop a full and fair record and support his conclusion with substantial evidence on this point just as he would on any other." Id. at 695.

22

2. *The ALJ's Failure to Properly Evaluate Plaintiff's Subjective Complaints:* The Court also agrees with Plaintiff that the ALJ failed to explain the weight he gave to Mr. Lang's subjective complaints of pain and depression.

In his decision, the ALJ stated he had considered Mr. Lang's subjective symptoms inasmuch as Plaintiff's "allegations exceeded the limitations reasonably expected from the medical findings." (Tr. at 20-21, *citing* § 404.1529 and Social Security Ruling 96-7p.[20]) The ALJ found that Plaintiff was limited by his injuries to a restricted range of motion; experienced constant pain to the extent that he could not perform most household chores or his past hobbies; had difficulty with prolonged standing, walking, sitting and any activity requiring overhead motions; and, despite medication for his depression, remained "constantly nervous and irritable." (Tr. 21.) The ALJ concluded that "the claimant overstates the symptoms" which "are inconsistent with the clinical and diagnostic findings found of record particularly as they relate to the claimant's exertional capacity." (Id.)

"Once an ALJ concludes that a medical impairment that could reasonably cause the alleged symptoms exists, he or she must

---

[20] "Social Security Rulings are agency rulings published 'under the authority of the Commissioner of Social Security' and 'are binding on all components of the Social Security Administration.'" Sykes, 228 F.3d at 271, *citing* 20 C.F.R. § 402.35(b)(1). "Rulings do not have the force and effect of the law or regulations but are to be relied upon as precedents in determining other cases where the facts are basically the same." Sykes, id., *quoting* Heckler v. Edwards, 465 U.S. 870, 873 n3 (1984).

23

evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999), citing 20 C.F.R. § 404.1529(c). The regulations provide that:

> statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. § 404.1529(a).

The regulations also recognize that symptoms "sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone." 20 C.F.R. § 404.1529(c)(3). Consequently, the ALJ is required to consider information about other relevant factors provided by the claimant, medical sources, or others such as activities of daily living; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to alleviate pain or other symptoms; treatment, other than medication, for relief; and other measures

used to relieve pain.   Id.

Here, the ALJ properly summarized the medical evidence relating to Plaintiff's treatment for lower back pain as evidenced by MRIs of the lumbar spine in November 2002 and June 2003, the after-effects of his fall in 2001 which resulted in a broken clavicle and several broken ribs, and a tear in the medial meniscus and a sprain of the medial collateral ligament in his left knee which resulted in arthroscopic surgery in April 2002.  (Tr. 132; 188-189.)  He continued to treat for on-going pain as late as December 7, 2004, when a physician at Allegheny Orthopaedic Specialists, Dr. Edward Snell, wrote a letter stating that Plaintiff was still such experiencing severe pain in his shoulder that the doctor did not think "he is able to hold down any type of employment at this point."  (Tr. 377.)  The Court recognizes that other physicians, e.g., Dr. Edward Poon and Dr. Arthur Palmer, were unable to identify any obvious medical reason for Mr. Lang's on-going complaints of pain.  That is, from a medical standpoint, Plaintiff's shoulder and knee appeared to be well-healed and that there was no objective neurological cause for the severe back pain he claimed to experience.  (See, e.g., Tr. at 134-136 and 215.)

However the ALJ did not reconcile the conflicting medical evidence provided, for instance, by Drs. Poon and Snell, nor assign

weight to their respective opinions.[21] Mr. Lang's complaints of ongoing pain are not inconsistent with the findings of Dr. Snell, a specialist in sports medicine, who treated Plaintiff for more than seven months in 2004. Where subjective complaints of pain are consistent with the medical evidence, those complaints should be given "great weight." Mason v. Shalala, 994 F.2d 1058, 1067-68 (3d Cir. 1993).

We recognize that the weight given to a claimant's allegations of pain depends in turn on the ALJ's view of the claimant's credibility. This determination by an ALJ is entitled to great deference by the district court. Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003). However, the credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently

---

[21] Social Security regulations carefully set out the manner in which medical opinions are to be evaluated. 20 C.F.R. § 404.1527. In general, every medical opinion received is considered. Unless a treating physician's opinion is given "controlling weight," the ALJ will consider (1) the examining relationship (more weight given to the opinion of an examining source than to the opinion of a non-examining source); (2) the treatment relationship (more weight given to opinions of treating sources); (3) the length of the treatment relationship and the frequency of examination (more weight given to the opinion of a treating source who has treated the claimant for a long time on a frequent basis); and (4) the nature and extent of the treatment relationship (more weight given to the opinions of specialist than to generalist treating sources.) 20 C.F.R. § 404.1527(d); see also Fargnoli v. Halter, 247 F.3d 34, 43(3d Cir. 2001), and Sykes, 228 F.3d at 266 n7. The opinions of a treating source are given controlling weight on questions of the nature and severity of the claimant's impairment(s) when the conclusions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2).

26

specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Schwartz v. Halter, 134 F. Supp.2d 640, 654 (E.D. Pa. 2001), quoting SSR 96-7p.  Where medical records indicate that a claimant has complained about pain to his treating physicians who are unable to explain its etiology, "an ALJ has a duty to consider a Plaintiff's subjective complaints of pain and to probe further."  Reefer, id. at 380-81.

As a second factor, it appears the ALJ failed to incorporate in his credibility determination the effect of Plaintiff's long work record.  It is well-established, Plaintiff argues, that a claimant with a long, productive work history will be given "substantial credibility" when describing his  work limitations. (Plf.'s Brief at 19.)   Plaintiff argues that given his "stellar work history," the ALJ erred by failing to give "greater weight" to his subjective complaints of pain and depression.  (Id. at 20.) Again, the Court concludes that it is unclear from the analysis what weight, if any, the ALJ gave to the fact that Mr. Lang had worked regularly for many years before he broke his shoulder and ribs in 2001.

In the precedential case on this issue, the plaintiff had worked as a meat cutter, despite repeated hospitalizations for ischemia and coronary insufficiency.  He was also diagnosed with degenerative disc disease, lumbosacral strain, cervical strain,

sciatic neuritis, and hypertension.  <u>Dobrowolsky v. Califano</u>, 606

F.2d 403-404 (3d Cir. 1979).  After his release from the hospital

following an automobile accident, Dobrowolsky attempted to work for

another year, but could do so only sporadically because of his

medical conditions.  At his hearing, Dobrowolsky testified that

recurrent pain prevented him from performing even light work.  The

Third Circuit Court of Appeals concluded that:

> testimony of subjective pain and inability to perform
> even light work is entitled to great weight, particularly
> when, as here, it is supported by competent medical
> evidence.  Moreover, when the claimant has a work record
> like Dobrowolsky's twenty-nine years of continuous work,
> fifteen with the same employer, his testimony as to his
> capabilities is entitled to substantial credibility.

<u>Dobrowolsky</u>, 606 F. 2d at 410.[22]

Here, the record shows that Mr. Lang worked from the time he

graduated from high school in 1976 (Tr. 91) until May 2003,

---

[22] *See also* <u>Taybron v. Harris</u>, 667 F.2d 412-413 (3d Cir. 1981)
(plaintiff worked steadily after his accident, underwent surgery and
spent 10 weeks in the hospital but was eventually forced to quit
because of pain); <u>Podeworney v. Harris</u>, 745 F.2d 210, 213 (3d Cir.
1984) (plaintiff was forced quit the job he held for 32 years after
company doctors determined he could not safely work as a crane
operator due to dizziness and blurred vision); <u>Sidberry v. Bowen</u>, 662
F.Supp. 1037-38 (E.D. Pa 1986) (although plaintiff was hospitalized 18
times, she continued to work for 12 years after the onset of her
condition); <u>Murgia v. Bowen</u>, CA 87-2789, 1988 U.S. Dist. LEXIS 1350,
*2, *7  (E.D. Pa. Feb. 16, 1988) (plaintiff had an excellent 20-year
work record in a well-paid position which he quit only after he
developed a retinal hemorrhage and dangerously elevated blood
pressure); <u>Moyer v. Shalala</u>, 828 F.Supp. 354 (E.D. Pa. 1993)
(plaintiff terminated because there was no work he could do at a naval
shipyard after he suffered extensive injuries to his arm and hand in
work-related accidents); and <u>Rieder v. Apfel</u>, 115 F. Supp.2d 496, 505
(M.D. Pa. 2000) (43-year-old plaintiff worked steadily since
graduating from high school and attempted to work even after she began
to experience cognitive dysfunction, seizure disorder, anxiety and
depression).

although he had already begun to experience knee and back problems as well as the effects of his broken clavicle and ribs.  He worked for 21 years for the same company, including supervisory responsibilities.  (Tr. 475.)  His salary during the last three years prior to his injury (1998-2000) was approximately $40,000 per year.  (Tr. 76.)  He attempted to work for a short time as a cook in a tavern after he was fired in May 2003, but testified that he had to give up that job after he lost feeling in his left arm and hand.  (Tr. 476-477.)

Although the ALJ acknowledged that he was required to consider Plaintiff's work history in considering his subjective allegations (Tr. 20-21), there is nothing in the decision to confirm that he did so.  In short, because the ALJ neither discusses the effect of Mr. Lang's long and substantive work history nor explains how he arrived at his credibility determination by referring to the evidence which is inconsistent with Mr. Lang's subjective complaints, the Court is unable to determine if his decision in this regard is based on substantial evidence.  Remand is therefore necessary for clarification of these points.

## V.  FURTHER PROCEEDINGS

Under 42 U.S.C. § 405(g), a district court may, at its discretion, affirm, modify or reverse the Secretary's final decision with or without remand for additional hearings.  However, the reviewing court may award benefits "only when the

29

administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the plaintiff is disabled and entitled to benefits." <u>Krizon v. Barnhart</u>, 197 F. Supp.2d 279, 291 (W.D. Pa. 2002), <i>quoting</i> <u>Podedworney v. Harris</u>, 745 F.2d 210, 222 (3d Cir. 1984).

Here, we conclude that the ALJ failed to properly apply the SSA regulations where drug or alcohol abuse is an element of the disability claim. In light of the abbreviated decision-making on the issue of alcoholism, we cannot determine if the ALJ would have reached the same decision if he had properly applied 20 C.F.R. § 404.1535. <u>Brueggemann</u>, 348 F.3d at 695, remanding for further consideration under similar circumstances. While the ALJ may again conclude that Plaintiff is not entitled to benefits, in our view, remand is necessary in order to assure that Plaintiff's claim has been considered in accord with the regulations. <i>See</i> <u>Coulbourne</u>, 2002 U.S. Dist. LEXIS 27029 at *10 (where the ALJ did not conduct the analysis properly, the court was unable to decipher exactly what was meant and thus could not be sure that the ALJ had appropriately evaluated the alleged disability.)

The Third Circuit Court of Appeals has held that "where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate or remand a case where such an explanation is not provided." <u>Fargnoli v. Halter</u>, 247 F.3d 34,

42 (3d Cir. 2001).  Here, the ALJ failed to explain the reasoning behind his conclusion that Mr. Lang's complaints of pain were inconsistent with medical evidence of record and failed to state his reasoning for (apparently) giving little or no consideration to Mr. Lang's substantial work history.  On remand, an explanation of his reasoning with regard to both these issues should be provided.

An appropriate order follows.

December ___8___, 2006

_William L. Standish_
William L. Standish
United States District Judge

cc:  Gregory G. Paul, Esq.
     Robert W. Gillikin, II, Esq.
     Robert Peirce & Associates, P.C.
     707 Grant Street
     2500 Gulf Tower
     Pittsburgh, PA 15219
     Email: gpaul@peircelaw.com
     Email: rgillikin@peircelaw.com

     Lee Karl
     United States Attorney's Office
     700 Grant Street
     Suite 4000
     Pittsburgh, PA 15219
     Email: lee.karl@usdoj.gov